IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| TONDA BAXTER,<br>*On her behalf and on behalf of*<br>*others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIHOME MORTGAGE COMPANY,<br>LLC, and CENLAR FSB,<br><br>Defendants. | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*    Civil Case No. 22-cv-1098-SAG<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Tonda Baxter, individually, and on behalf of a putative class of similarly situated individuals, sued Defendants AmeriHome Mortgage Company, LLC ("AmeriHome") and Cenlar FSB ("Cenlar"), alleging violations of Maryland's Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), and the federal Real Estate Procedures Act ("RESPA"). ECF 2. Plaintiff's initial complaint was filed against AmeriHome on September 1, 2020 in the Circuit Court for Baltimore County. ECF 1-1 at 1. On April 4, 2022, Plaintiff filed an Amended Complaint that added Cenlar as a Defendant and added a cause of action under RESPA. *Id.* On May 5, 2022, Defendants filed a notice of removal to this Court. ECF 1. Defendants have now moved to dismiss, ECF 22, and to strike certain portions of the Amended Complaint, ECF 23. This Court has considered both motions, Plaintiff's oppositions to them, ECF 26, 27, Defendants' replies, ECF 30, 31, and the parties' supplements, ECF 28, 31. No hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the following reasons, both motions will be denied.

I.      **FACTUAL BACKGROUND**

Plaintiff obtained a Federal Housing Administration ("FHA") loan, secured by a deed of trust recorded against real property, on June 26, 2018 in the amount of $284,747. ECF 2 ¶ 25. The loan was arranged by NFM, Inc., *id.*, but it was immediately transferred to AmeriHome. *Id.* ¶ 26. Cenlar acted as AmeriHome's sub-servicer. *Id.* ¶ 13. Along with her home purchase, Plaintiff acquired a homeowners' insurance policy with State Farm Insurance that met the coverage requirements under the applicable FHA guidelines. *Id.* ¶ 31. Plaintiff made all required payments under the loan. *Id.*

According to Plaintiff, the terms of her loan required AmeriHome to pay the annual insurance premium to State Farm using money that Plaintiff had paid as a portion of each monthly mortgage payment, and that had been set aside in an escrow account for that purpose. *Id.* Despite that obligation, AmeriHome never paid the annual insurance payment to State Farm, and the policy was cancelled. *Id.* ¶¶ 32, 35. AmeriHome then force-placed an insurance policy on Plaintiff's property, through an affiliate, "from its unlicensed business location in the State of South Carolina[.]" *Id.* ¶ 36.

Separately, on several occasions between July 15, 2019 and January 15, 2020, Defendants accepted Plaintiff's mortgage payments over the phone but allegedly told Plaintiff that she was required to pay Defendants a convenience fee for the telephone transaction. *Id.* ¶ 33. The loan documents do not expressly permit Defendants to charge convenience fees. *Id.* ¶ 49.

On several occasions, Defendants also misrepresented to Plaintiff the amount paid and owed on her loan. *Id.* ¶ 38-40. On February 5, 2020, Plaintiff wrote to AmeriHome disputing "the servicing of her loan, misapplication of her escrow payments, fees imposed and collected from her for [m]aking her payments over the telephone, imposition of late fees, and other related issues."

*Id.* ¶¶ 42-44. On February 22, 2020, Defendants' response "repeated its pattern of misrepresentations by continuing to improperly account for her payments; admitting to being aware of her homeowner's insurance but providing no explanation why it had improperly force-placed insurance from its affiliate instead of honoring Baxter's insurance policy; and failing to explain why it believed it was authorized to impose[] convenience fees." ECF 26 at 11.

Count I alleges, on behalf of Plaintiff individually and two putative subclasses of similarly situated Plaintiffs, that Defendants' collections practices—namely, their charging of convenience fees and their other deceptive efforts to collect sums not contractually owed—violate the MCDCA and the MCPA. ECF 2 ¶¶ 70-86. Count II alleges, on behalf of Plaintiff individually, that Defendants imposed and collected fees in violation of CLEC. *Id.* ¶¶ 87-92. Count III alleges, on behalf of Plaintiff individually, that Defendants committed servicing errors in violation of RESPA and its implementing regulations by failing to pay Plaintiff's insurance, force-placing an insurance policy on Plaintiff, failing to correct errors in the allocation of Plaintiff's payments, and failing to timely acknowledge, investigate, and respond to Plaintiff's written request and notice of error. *Id.* ¶¶ 93-104.

## II.    MOTION TO STRIKE

Defendants have moved to strike paragraphs 1(a), 5(a), 5(b), 5(c), 12, 17, 32, 35-38, 53(b), 53(c), and 53(d). ECF 23. Defendants first claim that the Amended Complaint violates Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Defendants also claim that the Amended Complaint is an impermissible "shotgun pleading" that fails to provide enough clarity to allow the Defendants to fashion a responsive pleading. At times, too, Defendants' briefing argues that the listed paragraphs are simply irrelevant to Plaintiff's claims. *See* ECF 30 at 4-8.

### a. Legal Standard

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading any "redundant, immaterial, impertinent or scandalous matter." Motions to strike are disfavored and "usually should be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Graff v. Prime Retail, Inc.*, 172 F. Supp. 2d 721, 731 (D. Md. 2001) (quoting 5A Wright & Miller, *Federal Practice and Procedure* § 1382 (2d ed. 1990)). "[M]otions to strike should be denied if there is any doubt as to whether the material in question raises an issue of fact or law." *Id.*

### b. Analysis

Defendants do not come close to meeting their burden to show that any paragraphs in the Amended Complaint should be stricken. First, Defendants argue the Amended Complaint violates Rule 8(a)(2) because "Baxter has pleaded 69 paragraphs of unconnected allegations" that do not allow Defendants to "frame a responsive pleading[.]" ECF 23-1 at 2-3. While the Amended Complaint is certainly not a model of clarity, concision, or organization, it alleges facts—and connects those facts to coherent legal theories—that are more than sufficient to allow Defendants to understand the claims at issue and respond to them. The best evidence of that, of course, is that Defendants did, in fact, respond to the Amended Complaint with a detailed motion to dismiss that contests almost all of Plaintiff's factual and legal allegations. *See* ECF 22. Defendants' motion to dismiss reflects no serious confusion about Plaintiff's allegations.

Second, the Amended Complaint is not a "shotgun pleading." A "shotgun pleading" is one that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief[.]" *Lee v. Meyers*, No. ELH-21-1589, 2022 WL

4

252960, at *11 (D. Md. Jan. 27, 2022) (quoting *Jackson v. Warning*, PJM-15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016)).  Again, the Amended Complaint is clear enough to allow Defendants to respond, because they *did* meaningfully respond.[1]  The Amended Complaint also makes clear "which allegations of fact are intended to support which claims for relief[.]" *Lee*, 2022 WL 252960, at *11.  Here, Defendants take issue with the Amended Complaint's inclusion of boilerplate language under each count that incorporates all preceding paragraphs.  Nearly every complaint filed in this Court (and others, in this Court's experience) contains similar language.  That boilerplate is, therefore, more the hallmark of habitually cautious lawyering than "the hallmark of a shotgun pleading" as Defendants argue.  ECF 23-1 at 3.  The Amended Complaint alleges the discrete legal basis for each cause of action, specifies the cause of action that is asserted on a class-wide basis, and those that are asserted by Plaintiff individually, and references the specific misconduct that allegedly violated each statute.  It is true that each factual allegation is not specifically realleged under each relevant cause(s) of action, but nothing requires that, and it would create a much more cumbersome complaint.  Rather, as is customary, the Amended Complaint contains a fact-based recitation, followed by the causes of action it alleges, with enough explanation within each cause of action to tie the factual allegations to the alleged violations of law.  That is all that is required, and nothing demonstrates the adequacy of the Amended Complaint's general coherence better than Defendants' substantive responses to it.  Finally, it cannot be said at this point that the specific paragraphs Defendants ask this Court to strike "have no possible relation to the controversy[,]" and Defendants have not shown that their inclusion in

---

[1] While Defendants have not yet filed a responsive *pleading*, their motion to dismiss reflects more than enough of an understanding of Plaintiff's claims to allow them to file a responsive pleading when the time comes.

the Amended Complaint has caused, or will cause, any prejudice to the Defendants. *Graff*, 172 F. Supp. 2d at 731 (quoting 5A Wright & Miller, *Federal Practice and Procedure* § 1382 (2d ed. 1990)). Accordingly, Defendants' motion to strike will be denied.

### III.   MOTION TO DISMISS[2]

#### a. Legal Standard

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the

---

[2] In her opposition to the motion to strike, Plaintiff argues that AmeriHome missed its deadline to respond to the Amended Complaint based on numerous state rules of civil procedure. As Defendants argue, though, the Federal Rules of Civil Procedure govern this action, and, in any event, this Court granted Defendants' motion for an extension of time to respond to the Amended Complaint. ECF 21.

pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### b. Analysis

Defendants move to dismiss the Amended Complaint on several grounds. First, they reiterate their unpersuasive argument that the Amended Complaint is a "shotgun pleading." Second, they argue that the voluntary payment doctrine precludes Plaintiff's claims. Third, Defendant Cenlar argues that Plaintiff's state law claims against it are preempted by the National Bank Act ("NBA"). Finally, Defendants argue that Plaintiff fails to state a claim with respect to her state law claims in Counts I and II. Notably, however, Defendants do not argue that Plaintiff's RESPA claim (Count III) fails to state a claim. For the same reasons explained above, the Amended Complaint is not an impermissible "shotgun pleading," but each of Defendants' additional arguments will be addressed in turn.

### i. Voluntary Payment Doctrine

"Under the common law voluntary payment doctrine, 'where money is voluntarily and fairly paid, with a full knowledge of the facts and circumstances under which it is demanded, it cannot be recovered back in a court of law[.]'" *Whitehall Mill v. Mayor & City Council of Baltimore*, No. 3337, 2020 WL 6253539, at *6 (Md. Ct. Spec. App. Oct. 23, 2020) (quoting *Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 360-61 (2016)). Defendants' argument is, therefore, that because Plaintiff was apparently aware of the convenience fee, and voluntarily paid it, the fee could not have been illegal. In support, Defendants rely on transcripts of the calls Plaintiff placed in order to make her mortgage payments. The transcripts purport to show that Defendants advised Plaintiff that she would be subject to a $5 convenience fee for paying over the phone, and that she consented nonetheless. ECF 22-1 at 14-16. Plaintiff responds with several arguments about why

the voluntary payment doctrine does not bar her claims. ECF 26 at 22-26. Most importantly, though, Plaintiff recognizes that this issue is inappropriate for resolution at the motion to dismiss stage.

In extremely limited circumstances, courts may consider evidence at the motion to dismiss stage if it is "'intrinsic' to the complaint[.]" *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150,154 (4th Cir. 2009). For example, the Fourth Circuit has held that courts may consider documents attached to the complaint. *Id.* Similarly, "courts may consider a document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Id.* (quotation omitted).

The Amended Complaint references certain phone calls between Plaintiff and Defendants, but it does not reference the transcripts of those calls, and it certainly does not "explicitly rel[y] on" them. *Id.* Accordingly, considering them at this stage would require conversion to a motion for summary judgment.

Regardless, Defendants' entire line of argument with respect to the voluntary payment doctrine is inappropriate at a motion to dismiss. To the extent the voluntary payment doctrine applies to this case at all, it is at best a fact-dependent affirmative defense to the merits of Plaintiff's allegations. *Caldwell v. Freedom Mortgage Corp.*, No. 3:19-CV-2193-N, 2020 WL 4747497, at *4 (N.D. Tex. Aug. 14, 2020) ("Determining whether Plaintiffs 'voluntarily' paid the convenience fees and had 'full knowledge of the facts' at the relevant time, however, involves factual issues that are inappropriate for resolution in a 12(b)(6) context."); *Langston v. Gateway Mortgage Group, LLC*, No. 520CV01902BAPKKX, 2021 WL 234358, at *4 n.4 (C.D. Cal. Jan. 15, 2021) ("'The voluntary payment [doctrine] is an affirmative defense that bars the recovery of money that

was voluntarily paid with knowledge of the facts.' . . . [A]ffirmative defenses may not be raised on a motion to dismiss where the defense is not apparent as a matter of law on the face of the complaint, as here.") (quoting *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012)).

To the extent Defendants believe the voluntary payment doctrine is a viable affirmative defense in this case, they are free to re-raise it at a later stage. But it is not a basis for dismissal.

### ii. Preemption

Cenlar argues that Plaintiff's MCDCA and MCPA claims against Cenlar are preempted by the NBA and its implementing regulations because Cenlar is a chartered federal savings bank. "The NBA authorizes national banks to exercise 'all such incidental powers as shall be necessary to carry on the business of banking,' including 'loaning money on personal security.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting 12 U.S.C. § 24 (Seventh)). However, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) (citations omitted). It is only when a state law "significantly impair[s] the exercise of authority, enumerated or incidental under the NBA, [that] the [s]tate's regulations must give way." *Id.* at 12. Cenlar argues that Office of the Comptroller of the Currency ("OCC") regulations allow it to collect convenience fees and that, therefore, "[t]he ability to charge convenience fees to its customers therefore falls squarely within Cenlar's banking powers." ECF 221- at 18-19 (relying on several regulations, including 12 C.F.R. § 7.4002(a), which allows a "national bank [to] . . . charge its customers non-interest charges and fees.").

What Cenlar does not reveal, however, is that the NBA expressly rejects its preemption argument. Indeed, the OCC regulations on which Cenlar relies specifically explain that the NBA does not preempt state laws that govern, among other subjects, "[r]ights to collect debts." 12 C.F.R. 7.4008(e)(4). Accordingly, courts have found that the NBA does not preempt state laws that regulate debt collection. *See Epps*, 675 F.3d at 325 ("[T]he inclusion of 'debt collection' in the savings clause is a reflection of the Supreme Court's recognition that generally applicable state debt collection laws apply to national banks."); *see also Aguayo v. U.S. Bank*, 653 F.3d 912, 928 (9th Cir. 2011); *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 282-83 (6th Cir. 2009); *O'Neal v. Capital One Auto Fin., Inc.*, No. 3:10-CV-40, 2011 WL 4549148, at *5 (N.D. W. Va. Sept. 29, 2011).

The state laws that Cenlar claims are preempted—the MCDCA and the MCPA—are "generally applicable state debt collection laws" that fall within the savings clause of 12 C.F.R. 7.4008(e)(4). *Epps*, 675 F.3d at 325. The Fourth Circuit in *Epps* explicitly held that CLEC was not preempted by the NBA or the OCC regulations because "CLEC does not discriminate against national banks, thus the savings clause applies to preserve the CLEC from any preemptive effect of the NBA or OCC regulations." *Id.* at 325-26. While Cenlar attempts to distinguish *Epps* because the issue there was whether certain CLEC provisions governing repossession notices were preempted by the NBA and OCC regulations, the *Epps* court's reasoning applies to the MCDCA and the MCPA. Like CLEC, those laws are "generally applicable state debt collection laws" and, therefore, the OCC regulations carve them out of the NBA's preemptive reach. Therefore, Plaintiff's MCDCA and MCPA claims against Cenlar are not preempted by the NBA.

11

### iii. MCDCA and MCPA Allegations (Count I)

For several reasons—most of which are foreclosed by the Fourth Circuit's decision in *Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370 (4th Cir. 2022)—Defendants argue that the Amended Complaint fails to state a claim that they violated the MCDCA and the MCPA. ECF 22-1 at 22-29. First, Defendants argue that the MCDCA (by incorporating the FDCPA) contains an exemption for fees and charges "permitted by law." *Id.* at 22. Defendants then point to the NBA regulations discussed above, namely, 12 C.F.R. § 7.4002(a), which they claim permit them to assess "non-interest charges or fees." ECF 22-1 at 22. Again, though, as explained above, that provision is subject to further restriction by generally applicable state debt collection laws. *See* 12 C.F.R. 7.4008(e)(4). Moreover, the Fourth Circuit in *Alexander* rejected a nearly identical argument. The defendant in *Alexander* relied on the FDCPA's exemption for fees "permitted by law" to argue that the convenience fees they charged did not violate the MCDCA. *Alexander*, 23 F.4th at 377. While it does not appear that the defendant in *Alexander* argued specifically that 12 C.F.R. § 7.4002(a) permits convenience fees, the Fourth Circuit nonetheless found that the same type of convenience fees at issue here are not "permitted by law" under the FDCPA's exemption that is incorporated into the MCDCA. *Id.* Rather, the Fourth Circuit held that "'permitted by law' requires affirmative sanction or approval, typically (though not always) from a statute." *Id.* The relatively general OCC regulation on which Defendants rely, allowing national banks to charge "non-interest charges or fees" is hardly an "affirmative sanction or approval" of the convenience fees at issue here.[3] *Id.*

---

[3] Defendants also rely on two cases in support of their argument, both of which are unavailing. First, they both predate the Fourth Circuit's decision in *Alexander*, which invalidates most of Defendants' arguments here. Second, neither is persuasive. In *Waddell v. U.S. Bank National Association*, 395 F. Supp. 3d 676 (E.D.N.C. 2019), the court found that 12 C.F.R. § 7.4002 "authorized" the charging of convenience fees, but it does not appear to have considered the impact

12

The same is true of Defendants' second argument that convenience fees are "permitted by law" under a CLEC provision that allows a credit grantor to collect "loan fees, points, finder's fees, and other charges." C.L § 12-1005(a)(1).  In the same way that 12 C.F.R. 7.4002(a)'s grant of permission to charge "non-interest charges or fees" is not an "affirmative sanction or approval" of Defendants' ability to charge convenience fees, *Alexander*, 23 F.4th at 377, neither is the CLEC provision allowing creditors to charge "loan fees, points, finder's fees, and other charges." C.L. § 12-1005(a)(1).

Defendants acknowledge that the remainder of their arguments—that a convenience fee is not a debt; that collecting convenience fees is not debt "collection" for purposes of the FDCPA or the MCDCA; and that optional convenience fees are not "incidental" to the underlying debt obligation—are each foreclosed by the Fourth Circuit's decision in *Alexander*.  Accordingly, their motion to dismiss is denied with respect to Count I.

---

of 12 C.F.R. § 7.4008(e)(4), which makes clear that state debt collection laws may further restrict the ability of federal savings banks to charge "non-interest charges or fees[.]"  It is also not at all clear to this Court that the *Waddell* court would come to the same conclusion today in light of the Fourth Circuit's interpretation that "permitted by law" means that a law must "affirmative[ly] sanction or approv[e]" of the contested practice. *Alexander*, 23 F.4th at 377.  Admittedly, there is arguably some tension between a federal regulation permitting national banks to charge "non-interest charges or fees" subject to more restrictive state debt collection laws, and a state debt collection law like the MCDCA that incorporates an exemption for fees "permitted by law."  In other words, each law (or regulation in the case of the OCC regulations) arguably defers to the other on what is permissible.  Nonetheless, given the Fourth Circuit's analysis in *Alexander* under the exact same "permitted by law" exemption on which Defendants rely here, this Court declines to adopt the *Waddell* court's analysis.  The second case on which Defendants rely, *Ceasar v. Equifax Credit Reporting*, No. 17-001167, 2017 WL 6417634 (W.D. La. Oct. 13, 2017), does not appear to involve convenience fees at all, contrary to Defendants' suggestion, and it only cites 12 C.F.R. § 7.4002 for the proposition that national banks "are permitted to charge fees for overdraft of accounts for, among other purposes, deterrence." *Id.* at *2.

### iv. CLEC Claim (Count II)

Defendants attack Plaintiff's CLEC claim with three main arguments. First, they argue that Plaintiff is not entitled to declaratory relief under C.L. § 12-1018(a)(2). Second, they misconstrue Plaintiff's CLEC allegations about AmeriHome's licensure by arguing that Fin. Inst. § 11-505 does not provide a private right of action. And third, Defendants argue that Plaintiff fails to state a cause of action with respect to their handling of funds in Plaintiff's escrow account.

#### 1. Declaratory Relief

Defendants argue that Count II must be dismissed because Baxter is not entitled to seek a declaratory judgment under the provisions she cites in the Amended Complaint: C.L. §§ 12-1005, 12-1018, 12-1024, and 12-1027. ECF 22-1 at 29. Defendants' argument relies on the Fourth Circuit's decision in *Gardner v. GMAC, Inc.*, 796 F.3d 390 (4th Cir. 2015). In that case, the Fourth Circuit reviewed C.L. § 12-1021, which governs repossession notice requirements, and it held that § 12-1021 does not provide for declaratory relief. *Id.* at 397. Defendants seek to analogize the Fourth Circuit's holding with respect to § 12-1021 to Plaintiff's claims here. As Plaintiff points out, though, more recently, the Maryland Court of Special Appeals interpreted CLEC to allow "the same type of declaratory relief sought by Ms. Baxter" in *Bolling v. Bay Country Consumer Fin., Inc.*, 256 A.3d 271 (Md. Ct. Spec. App. 2021), *reargument denied* (Sept. 2, 2021). ECF 26 at 35-36. In doing so, the Court of Special Appeals explicitly disagreed with the Fourth Circuit's contrary holding in *Gardner*. *Bolling*, 256 A.3d at 281-82. And just this year, the Maryland Court of Appeals acknowledged the holding in *Bolling* without criticism. *Lyles v. Santander Consumer USA Inc.*, 478 Md. 588 (2022). Defendants argue that the Court of Appeals' opinion in *Lyles* should be disregarded because it was narrowly focused on issues about how to calculate damages under CLEC, rather than whether declaratory relief is appropriate under § 12-1018(a)(2). ECF 29

at 9. While the *Lyles* opinion acknowledged the holding in *Bolling* on which Plaintiffs rely, Defendants are correct that the Court of Appeals did not squarely address this issue.

Nevertheless, presented with a conflict between a 2015 Fourth Circuit opinion construing analogous provisions of CLEC, and a 2021 Court of Special Appeals decision interpreting the same provision at issue here (with or without the 2022 Court of Appeals decision acknowledging that interpretation without criticism), this Court must defer to the Court of Special Appeals' more recent interpretation of Maryland law. *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1003 (4th Cir. 1998) ("A federal court can depart from an intermediate court's fully reasoned holding as to state law only if 'convinced' that the state's highest court would not follow that holding.").

### 2. AmeriHome's Licensure

Defendants argue that "Baxter is not entitled to bring an independent cause of action under Fin. Inst. § 11-505 because it provides no private right of action." ECF 22-1 at 30. But the Amended Complaint does not plead a claim under that statute. Rather, the Amended Complaint alleges that AmeriHome violated CLEC (which incorporates Title 11, Subtitle 5 of the Financial Institutions Article) by conducting business in relation to the Baxter loan from South Carolina without being licensed in that state. ECF 2 ¶ 36. Accordingly, Defendants' arguments about whether Fin. Ins. § 11-505 creates a private right of action do not impact Plaintiff's CLEC claim.

### 3. AmeriHome's Handling of Plaintiff's Escrow Account

Defendants argue that "Section 12-1026 does not create a cause of action in the event that a lender fails to pay a borrower's homeowner's insurance from available escrow funds." ECF 22-1 at 30. According to Defendants, that is because § 12-1026(c)(1) mandates that funds held in escrow accounts are only "for use in paying taxes, insurance premiums, and ground rents" and "may not be used" to "reduce the principal" or to "pay interest or other loan charges." But Plaintiff

does not merely allege that Defendants failed to pay her insurance premium. She also alleges that Defendants force-placed an insurance policy on her account, which resulted in Defendants "indirectly collect[ing] payments of other charges, including service charges[.]" ECF 2 at 48(c)-(d). While Defendants' argument may later prove meritorious if Plaintiff cannot ultimately show that escrow funds were used to "reduce the principal" or to "pay interest or other loan charges[,]" C.L. § 12-1026(c)(1), Plaintiff has alleged enough at this point to survive a motion to dismiss on this portion of its CLEC claim. The remainder of Defendants' arguments about their handling of Plaintiff's escrow account are fact-based arguments that are inappropriate for adjudication on a motion to dismiss.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, ECF 22, and motion to strike, ECF 23, will be DENIED. A separate order follows.


DATED: July 29, 2022                              /s/
                                           Stephanie A. Gallagher
                                           United States District Judge